Jeffrey Lewis (SBN 66587)
KELLER ROHRBACK L.L.P.
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Phone (510) 463-3900
Fax (510) 463-3901
jlewis@kellerrohrback.com

Attorneys for Plaintiffs
*(Additional Attorneys Listed on Signature Page)*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SPENCER LYBROOK, ALEC ENGLISH, MICHAEL WATSON, and CODY HILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, individually and on behalf of all others similarly situated, bring this Complaint against Robinhood Financial, LLC, Robinhood Securities, LLC, and Robinhood Markets, Inc., ("Defendants" or "Robinhood"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

### I.      NATURE OF THE ACTION

1.       Robinhood is an app- and web-based brokerage that claims its mission is to "democratize finance for all" and give "everyone . . . access to the financial markets."[1] By offering no-

---

[1] *Our Mission*, Robinhood, https://robinhood.com/us/en/support/articles/our-mission/#:~:text=Robinhood's%20mission%20is%20to%20democratize,for%20newcomers%20and%20experts%20alike (last visited Feb. 5, 2021).

fee stock trades and a simple app interface, it has grown its client base to more than 10 million retail investors seeking to manage their own investments through Robinhood's trading platform.

2.      Despite professing to prioritize access to the financial markets, on January 28, 2021, at the peak of a rise in several stocks' prices driven by interest on the part of retail investors, Robinhood announced an unprecedented restriction on its online trading platform. Without warning, Robinhood claimed that "market volatility" necessitated restricting all its users from buying any more shares of the 13 rising stocks, notably including GameStop and AMC (collectively, "Restricted Stocks").[2] Notably, Robinhood did not restrict its users from selling the Restricted Stocks.

3.      Robinhood's customer agreement with its users ("Customer Agreement") does not suggest that it would ever impose such a blanket restriction on all its users.

4.      Robinhood's unprecedented restriction on January 28, 2021, caused losses to two types of its customers: 1) users who already held the Restricted Stocks, and 2) users who wanted or attempted to buy them during the period of restriction. These two categories of consumers were hurt because the restriction prevented Robinhood users who wanted or attempted to purchase the Restricted Stocks from doing so, and exerted considerable downward pressure on the Restricted Stocks' prices. While share prices for some of the Restricted Stocks rebounded slightly over the following days, many of Robinhood's users will never recoup the money they lost—or the money they should have made— due to this unprecedented restriction on trading.

5.      Those who already held the Restricted Stocks, the first group, were harmed because Robinhood's actions reduced the market price of the Restricted Stocks, depriving them of the opportunity to sell at the higher prices that would have prevailed but for Robinhood's actions. Meanwhile, the second group—those who wished to purchase the Restricted Stocks on January 28 as they rose and sell them once they did—were similarly harmed. Moreover, they were also deprived of the opportunity to purchase the Restricted Stocks elsewhere because Robinhood's restrictions were imposed without warning while its clients' money was tied up in Robinhood brokerage accounts.

---

[2] The other Restricted Stocks include: American Airlines Group, Inc., BlackBerry Ltd., Bed Bath & Beyond Inc., Castor Maritime, Inc., Express, Inc.., Koss Corp., Naked Brand Group Ltd., Nokia Oyj, Sundial Growers, Inc., Tootsie Roll Industries, Inc., and trivago N.V.

6.      Additionally, and ironically, the deleterious effect of Robinhood's conduct on the Restricted Stocks' market prices created an opportunity for profit that everyone *except* Robinhood's millions of retail customers could profit from: other market participants were able to cover short positions or attempt to profit from the rebound once the restrictions were lifted by buying the Restricted Stocks on January 28 while the prices were artificially depressed by Robinhood's restrictions. While this was happening, Robinhood's users had no choice but to sit on the sidelines and either lose money or not make money they otherwise could have made.

## II.      PARTIES

### A.      Plaintiffs

7.      Plaintiff Spencer Lybrook is a resident of Eugene, Oregon. He first began using Robinhood's online trading platform on January 17, 2021. On January 27, 2021, after learning about the "short squeeze" related to certain stocks such as GameStop, Mr. Lybrook purchased 5 shares of BlackBerry at $23.28 per share and 22.5 shares of Nokia at $6.65 per share, expecting those stocks' value to increase over time. But on January 28, 2021, Robinhood announced its restrictions on its users' ability to buy Restricted Stocks, including BlackBerry and Nokia, and Mr. Lybrook had to sit by and watch the value of his BlackBerry shares drop to $18.75 and the value of his Nokia shares drop to $5.29 before he could sell. Mr. Lybrook believes that Robinhood's actions caused the value of his stocks to decrease. Had Mr. Lybrook known that Robinhood would take such dramatic and unprecedented actions that would prevent retail traders from buying specific stocks, he would not have used Robinhood in the first place. But for Robinhood's unprecedented restriction on trading, Mr. Lybrook would not have suffered those losses.

8.      Plaintiff Alec English is a resident of Smithfield, Virginia. He first began using Robinhood's online trading platform in or before October 2019. On January 27, 2021, after learning from social media about trends related to certain stocks, Mr. English placed a limit order to purchase 10 shares of Nokia at $5.22 per share. After Robinhood announced its restrictions on January 28, 2021, Mr. English attempted to place an order for 5 more shares of Nokia, but that order was not processed until January 29, 2021, at $5.12 per share. Mr. English also purchased 5 shares of AMC on January 29, 2021, at $11.99 per share. Mr. English would have purchased more shares of these stocks if Robinhood

had not prevented its users from purchasing them. He believes that Robinhood's actions caused the value of his shares to flatline and then drop. At the time of filing this complaint, he still owns shares of Nokia and AMC. Had Mr. English known that Robinhood would take such dramatic and unprecedented actions that would prevent retail traders from buying specific stocks, he would not have used Robinhood in the first place. But for Robinhood's unprecedented restriction on trading, Mr. English would not have suffered those losses, and would have purchased more shares and profited on them.

9.     Plaintiff Michael Watson is a resident of Austin, Texas. He first began using Robinhood's online trading platform on or around January 19, 2021. On January 25, 2021, after learning about purchasing activity related to certain stocks, Mr. Watson began purchasing multiple shares of GameStop for as low as $30 per share, as well as buying shares of AMC, BlackBerry, Nokia, and Express, expecting those stocks' value to increase over time. On January 28, 2021, Robinhood announced its restrictions on its users' ability to buy Restricted Stocks, including GameStop, preventing Mr. Watson from buying more stock with money he transferred to his Robinhood account for that express purpose. Mr. Watson believes that Robinhood's actions caused him to lose money. Had Mr. Watson known that Robinhood would take such dramatic and unprecedented actions that would negatively impact the value of stocks he owned, he would not have used Robinhood in the first place. But for Robinhood's unprecedented restriction on trading, Mr. Watson would not have suffered those losses, and would have purchased more shares and profited on them.

10.     Plaintiff Cody Hill is a resident of Houston, Texas. He first began using Robinhood on July 3, 2020. On January 25, 2021, Plaintiff Hill purchased 238 shares of AMC, 59 shares of BlackBerry, and 200 shares of Nokia, expecting the stock price to increase in the near future. On January 27, Plaintiff Hill increased his AMC position, purchasing an addition 300 shares of AMC, and modified his Nokia position by selling the 200 shares he was holding in the morning, and purchasing an additional 160 shares at a lower price in the afternoon. Despite these stocks reaching Plaintiff Hill's target price during pre-hour trading on January 28, Robinhood's pre-open announcement forced the stock price down before he was able to sell the stocks when the market opened for regular trading activity. As a result, his positions dropped approximately $5,000. Had Plaintiff Hill known that

Robinhood would take such dramatic and unprecedented actions to manipulate these securities prices, he would not have used Robinhood, and but for Robinhood's unprecedented actions, he would not have suffered the losses he did.

**B.      Defendants**

11.      Defendant Robinhood Financial, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission. Defendant Robinhood Financial, LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC. Defendant Robinhood Financial, LLC may be served with process by serving its registered agent, Incorporating Services, Ltd. at 7801 Folsom Blvd. #202, Sacramento, California 95826.

12.      Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Securities, LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial, LLC. Defendant Robinhood Securities, LLC may be served with process by serving its registered agent, Incorporating Services, Ltd. at 7801 Folsom Blvd. #202, Sacramento, California 95826.

13.      Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial, LLC and Robinhood Securities, LLC, and a registered broker-dealer with the SEC. Defendant Robinhood Markets, Inc. may be served with process by serving its registered agent, Incorporating Services, Ltd. at 7801 Folsom Blvd. #202, Sacramento, California 95826.

### III.      JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), since some of the members of the proposed classes are citizens of a State different from that of the Defendants and, upon the original filing of this

Complaint, members of the putative class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

15.     The Court also has personal jurisdiction over the parties because Defendants conduct a major part of their national operations, advertising, and sales through continuous business activity in this District, and also maintain their corporate headquarters in this District.

16.     Venue is further appropriate pursuant to 28 U.S.C. §1391 because Defendants conduct a large amount of their business in this District, because it has specifically marketed, advertised, and made substantial sales in California, and because Defendant has substantial relationships in this District. Venue is also proper in this Court because a substantial part of the events and actions giving rise to the harm suffered by members of the Proposed Class occurred in this District.

17.     Moreover, upon information and belief, the conduct at issue herein emanated from Defendants' corporate headquarters in this District.

## IV.     FACTUAL BACKGROUND

### A.     Robinhood's trading app, user growth, and investment and revenue sources.

18.     In 2015, Robinhood, a securities broker-dealer, launched its online stock trading application or "app."[3] Robinhood's app allows users to sign up for free and, once they have initiated a transfer of funds to their accounts, to buy and sell stocks and futures on the U.S. stock market for no charge and for no annual fees. Users can make these trades either via the app on their smart phones or via the Robinhood website.

19.     According to Robinhood, its mission was to "democratize finance for all" and give "everyone . . . access to the financial markets."[4]

---

[3] Jacob Kastrenakes, *Robinhood launches its free stock-trading app on Android*, The Verge (Aug. 13, 2015, 9:00 AM), https://www.theverge.com/2015/8/13/9141431/robinhood-android-app-launch-free-stock-trading.

[4] *Our Mission*, Robinhood, https://robinhood.com/us/en/support/articles/our-mission/#:~:text=Robinhood's%20mission%20is%20to%20democratize,for%20newcomers%20and%20experts%20alike (last visited Feb. 5, 2021).

20.     Since launching in 2015, Robinhood has been able to steadily grow its user base. As of December 2019, Robinhood had grown its user base to over 10 million retail investors.[5] By October 2020—thanks to the pandemic and its ongoing marketing efforts—Robinhood acquired millions more users, bringing its total to over 13 million users.[6]

21.     As Robinhood's user numbers grew, so did its investors. Robinhood secured approximately $320 million in investment funding in 2019, then an additional $280 million in 2020.[7]

22.     Investors were willing to pump hundreds of millions of dollars into Robinhood because Robinhood had started making money off its growing user base. But Robinhood does not make money from its users directly because Robinhood does not charge them to download its application or to make trades, and does not charge any annual fees. Instead, "Robinhood makes money by passing its customer trades along to large market-making firms, like Citadel, which pay Robinhood for the chance to fulfill its customer stock orders," a practice known as "payment for order flow."[8] Robinhood reportedly receives 17 cents per hundred equity trades, and 58 cents per hundred options trades.[9]

23.     Robinhood reportedly made $180 million during the second quarter of 2020 alone, with over $110 million of that coming from options trades.[10]

---

[5] Maggie Fitzgerald, *Start-up Robinhood tops 10 million accounts even as industry follows in free-trading footsteps*, CNBC (Dec. 4, 2019, 10:12 AM), https://www.cnbc.com/2019/12/04/start-up-robinhood-tops-10-million-accounts-even-as-industry-follows-in-free-trading-footsteps.html.

[6] Avi Salzman, *Robinhood's User Base Is Still Growing, Analyst Says*, Barron's (Oct. 7, 2020, 8:00 PM), https://www.barrons.com/articles/robinhoods-growth-rate-is-still-super-hot-analyst-projects-51602099647.

[7] Alex Wilhelm & Natasha Mascarenhas, *Robinhood raises $280M, pushing its valuation to $8.3B*, TechCrunch (May 4, 2020, 10:48 AM), https://techcrunch.com/2020/05/04/robinhood-raises-280m-pushing-its-valuation-to-8-3b/.

[8] *See* Kate Kelly, et al., *Robinhood, in Need of Cash, Raises $1 Billion From Its Investors*, N.Y. Times (Feb. 1, 2021), https://www.nytimes.com/2021/01/29/technology/robinhood-fundraising.html; Kate Rooney & Maggie Fitzgerald, *Here's how Robinhood is raking in record cash on customer trades – despite making it free*, CNBC (Aug. 14, 2020, 10:17 AM), https://www.cnbc.com/2020/08/13/how-robinhood-makes-money-on-customer-trades-despite-making-it-free.html.

[9] Kelly, *supra* n. 8.

[10] Rooney, *supra* n. 8.

**B.      During the week leading up to Thursday, January 28, 2021, relevant stock prices rose by up to 450% as a part of a "short squeeze."**

24.      In early January 2021, word began to spread on the internet that hedge funds and other institutional investors were heavily "shorting" numerous stocks, including GameStop, AMC, and Bed Bath & Beyond.[11] "Shorting" a stock is a method of speculating that a stock's price will go down over time, and of profiting on such a drop. In simple terms, it works by borrowing another shareholder's interest in a stock via a margin account and then selling that interest, with the intention of buying it back after the price drops and returning it to the shareholder, and pocketing the difference. The risk, of course, is that the price goes up instead.

25.      Numerous retail investors—many of whom used the Robinhood trading app—identified the hedge funds' and institutional investors' short positions as an opportunity to "squeeze" the hedge funds and, hopefully, make money for the retail investors.[12] A short squeeze occurs when the price goes up and short sellers must quickly buy back shares to "cover" their short positions before they lose even more money, and another investor or investors buys the stock, driving up the price that the short sellers must pay to cover their options, and making those investors money at the short seller's expense.

26.      In the case of at least GameStop and AMC, retail investors observed that institutional investors and hedge funds held short positions that occupied a significant percentage of the total float of shares on the market—in GameStop's case, possibly *exceeding* the total float. This fact created the opportunity for relatively small retail investors to buy up a significant percentage of available shares, driving up the price in the short term and creating a short squeeze where the large investors with significant short positions would be forced to buy back the finite number of available shares at higher and higher prices in order to cover their short positions.

---

[11] David Ingram & Lucy Bayly, *GameStop? Reddit? Explaining what's happening in the stock market*, NBC News (Jan. 27, 2021, 5:33 PM), https://www.nbcnews.com/business/business-news/gamestop-reddit-explainer-what-s-happening-stock-market-n1255922.
[12] *Id.*

27.     During the period leading up to January 28, 2021, the share prices of various shorted stocks rose exponentially. GameStop, a brick-and-mortar video game retailer, saw its share prices rise from about $20 on January 12, 2020, to almost $500 by January 28, 2021.[13] Likewise, share prices for AMC, the movie theater company, rose from around $2 on January 12, 2021, to over $20 on January 27, 2021.[14]

28.     As a result of these share price increases, it was widely reported that various hedge funds lost billions of dollars, at least on paper, as the price rose and their speculative short positions failed.[15] It was also widely reported that one of the biggest losers was one of Robinhood's biggest market-maker customers, Citadel LLC.[16]

29.     But the billions of dollars hedge funds were losing were not merely being "lost"; those billions of dollars were also being won by someone else—in part, retail investors, like Robinhood's

---

[13] *Id.*; *GameStop – Stock Price History | GME*, Macrotrends, https://www.macrotrends.net/stocks/charts/GME/gamestop/stock-price-history (last visited Feb. 5, 2021) (noting that the all-time high price was $483, and that the all-time high closing price was $347).

[14] Rebecca Rubin & Todd Spangler, *AMC Theatres Shares Just Plunged More Than 50%. What's Next for Stocks Roiled by Reddit?*, Yahoo! (Jan. 28, 2021), https://www.yahoo.com/now/amc-theatres-shares-just-plunged-194249400.html.

[15] Katherine Burton, et al., *Hedge-Fund Titans Lose Billions to Reddit Traders Running Amok*, Yahoo! Finance (Jan. 28, 2021), https://finance.yahoo.com/news/cohen-sundheim-lose-billions-reddit-022818276.html; *see also* https://www.bloomberg.com/news/articles/2021-01-28/cohen-sundheim-lose-billions-to-reddit-traders-running-amok.

[16] *See* Jeff John Roberts & David Z. Morris, *Robinhood makes millions selling your stock trades … is that so wrong?*, Fortune (July 8, 2020, 8:13 AM), https://fortune.com/2020/07/08/robinhood-makes-millions-selling-your-stock-trades-is-that-so-wrong/; Ryan Ori, *Chicago billionaire Ken Griffin faces controversy involving Wall Street chat rooms, Robinhood trading app and GameStop's stock*, Chicago Tribune (Jan. 29, 2021, 5:10 PM), https://www.chicagotribune.com/business/ct-biz-gamestop-robinhood-citadel-ken-griffin-20210129-pz3ln7d6wra5rbpno7nb5rgvgm-story.html (discussing relationship between Robinhood and Citadel); Shalini Nagarajan & Harry Robertson, *These hedge funds have gotten torched by the Wall Street Bets army that targeted their short positions in GameStop*, Markets Insider (Jan. 28, 2021, 6:18 PM), https://markets.businessinsider.com/news/stocks/hedge-funds-torched-wall-street-bets-gamestop-short-squeeze-reddit-2021-1-1030016596 (discussing Melvin Capital's losses during the GameStop saga, which caused Citadel and Point72 to give it almost $3 billion).

users.[17] Then Robinhood restricted all its users from buying 13 different stocks, causing share prices to plummet.

**C.   On January 28, 2021, Robinhood unexpectedly and unilaterally restricted its users' ability to buy 13 stocks, causing share prices to plummet and causing billions of dollars in losses for retail investors, including Robinhood users.**

30.   In an unprecedented move, Robinhood announced on Thursday morning, January 28, 2021, that it was restricting its users from buying shares in the 13 different Restricted Stocks:

> In light of recent volatility, we are restricting transactions for certain securities to position closing only, including $AAL, $AMC, $BB, $BBBY, $CTRM, $EXPR, $GME, $KOSS, $NAKD, $NOK, $SNDL, $TR and $TRVG.[18]

31.   Notably, not all of these stocks were significantly shorted, meaning that no short squeeze was possible. The only thing all 13 stocks have in common is that they were favored by retail investors who frequented investment forums like Reddit's "WallStreetBets." Some had been identified as potential short squeeze opportunities, but several others—notably including the technology companies BlackBerry and Nokia, and the headphone manufacturer Koss—were favored because they were considered by those retail investors to be undervalued due to forthcoming technology (such as BlackBerry's automobile infotainment operating system and Nokia's role in the rollout of 5G cellular service) or the popularity of their products during the pandemic (Koss).

32.   Share prices immediately plummeted for most of the Restricted Stocks—notably including those that had received the most media attention and attracted the highest volume of trades by retail investors—including AMC, BlackBerry, Bed Bath & Beyond, Express, GameStop, Koss,

---

[17] Matt Phillips & Taylor Lorenz, *'Dumb Money' Is on GameStop, and It's Beating Wall Street at Its Own Game*, N.Y. Times (Feb. 1, 2021), https://www.nytimes.com/2021/01/27/business/gamestop-wall-street-bets.html.

[18] American Airlines Group, Inc., AMC Entertainment Holdings, Inc., BlackBerry Ltd., Bed Bath & Beyond Inc., Castor Maritime, Inc., Express, Inc., GameStop. Corp., Koss Corp., Naked Brand Group Ltd., Nokia Oyj, Sundial Growers, Inc., Tootsie Roll Industries, Inc., trivago N.V. *See* Maggie Fitzgerald, *Robinhood restricts trading in GameStop, other names involved in frenzy*, CNBC (Jan. 28, 2021, 534 PM), https://www.cnbc.com/2021/01/28/robinhood-interactive-brokers-restrict-trading-in-gamestop-s.html.

Nokia, Tootsie Roll, and trivago N.V. The following graphs and data demonstrate that the Restricted Stocks' share prices were rising until Robinhood imposed its restrictions—leading most of the Restricted Stocks' trading volumes to fall significantly by amounts ranging 40-70%—at which point the majority of share prices fell:

33.    AMC[19]: Opened at $11.98 on 1/28, Closed at $8.63:



[19] *AMC Entertainment Holdings, Inc. Historical Quotes*, MarketWatch, https://www.marketwatch.com/investing/stock/amc/download-data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

34.    BlackBerry (BB)[20]: Opened at $19.47 on 1/28, Closed at $14.65:



---

[20] *BlackBerry Ltd. Historical Quotes*, MarketWatch,
https://www.marketwatch.com/investing/stock/bb/download-
data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

35.     Bed Bath & Beyond (BBBY)[21]: Opened at $41.28 on 1/28, Closed at $33.64:



[21] *Bed Bath & Beyond Inc. Historical Quotes*, MarketWatch, https://www.marketwatch.com/investing/stock/bbby/download-data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

36.     Express (EXPR)[22]: Opened at $7.11 on 1/28, Closed at $4.70:



[22] *Express Inc. Historical Quotes*, MarketWatch, https://www.marketwatch.com/investing/stock/EXPR/download-data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

1

37.    GameStop (GME)[23]: Opened at $265 on 1/28, Closed at $193.60:



[23] *GameStop Corp. Historical Quotes*, MarketWatch,
https://www.marketwatch.com/investing/stock/GME/download-
data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

1

38.     Koss[24]: Opened at $74.00 on 1/28, Closed at $41.96:



[24] *Koss Corp. Historical Quotes*, MarketWatch,
https://www.marketwatch.com/investing/stock/KOSS/download-data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

39.      Nokia (NOK)[25]: Opened at $5.18 on 1/28, Closed at $4.69:



| DATE | OPEN | HIGH | LOW | CLOSE | VOLUME |
|---|---|---|---|---|---|
| 01/28/2021 | $5.1800 | $5.5300 | $4.5900 | $4.6900 | 675,220,938 |
| 01/27/2021 | $4.9900 | $9.7900 | $4.8700 | $6.5500 | 1,144,059,000 |
| 01/26/2021 | $5.0800 | $5.2700 | $4.6100 | $4.7300 | 379,387,281 |
| 01/25/2021 | $4.5400 | $4.9180 | $4.5300 | $4.8500 | 296,379,281 |
| 01/22/2021 | $4.1900 | $4.2200 | $4.1400 | $4.2000 | 29,126,721 |
| 01/21/2021 | $4.1800 | $4.2300 | $4.1600 | $4.2200 | 22,054,869 |

[25] *Nokia Corp. Historical Quotes*, MarketWatch,
https://www.marketwatch.com/investing/stock/NOK/download-
data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

40.     Tootsie Roll (TR)[26]: Opened at $42.82 on 1/28, Closed at $38.78:



[26] *Tootsie Roll Industries Inc. Historical Quotes*, MarketWatch,
https://www.marketwatch.com/investing/stock/TR/download-
data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

41.     trivago N.V. (TRVG)[27]: Opened at $2.69 on 1/28, Closed at $2.48:



42.     Falling share prices caused substantial losses for people who owned shares of the above companies, including any Robinhood users who owned shares in those companies. Not surprisingly, those losses lead to massive gains for the previously hurting short-sellers:

---

[27] *trivago N.V. Historical Quotes*, MarketWatch, https://www.marketwatch.com/investing/stock/TRVG/download-data?startDate=1/21/2021&endDate=1/28/2021 (last updated Mar. 5, 2021).

On Thursday, short sellers had a mark-to-market loss of $8.54 billion at GameStop's intraday high and a gain of $14.83 billion at the intraday low, **a swing of more than $23 billion** . . . .[28]

43.    Because Robinhood maintained these restrictions throughout the day on January 28, 2021, its millions of users could not buy more shares of the Restricted Stocks as prices went down. This also harmed its users the following day, when some share prices rebounded.[29]

44.    The harms to Robinhood's users, who were not able to make trades using the money in the brokerage accounts, are clear. Users also could not make trades elsewhere because their funds were tied up in their Robinhood accounts, and transfers into brokerage accounts often take days. But the market effects of suddenly and unilaterally preventing millions of retail investors from purchasing certain stocks go well beyond denying those investors an opportunity to invest, it also had a significant and deleterious effect on overall trading volume and the market price of the affected securities.

45.    Nothing about Robinhood's unprecedented actions serves its mission to "democratize" finance or "provide access" to the markets to "everyone"—suddenly cutting off the ability of ordinary retail investors to make trades available to institutional investors does quite the opposite.

**D.    Robinhood's agreement with its users does not state or suggest that Robinhood would ever restrict broadly traded stocks from being purchased by all its users, let alone 13 different stocks, based on purported "market volatility."**

46.    Robinhood requires its customers to enter into the Customer Agreement, which explains the terms of the relationship between Robinhood and its users. But the Customer Agreement never expressly states, mentions, or implies the possibility that Robinhood could, or would, ever impose a blanket trading restriction for all its users on broadly traded stocks, particularly when stock prices are rising, for reasons of supposed "market volatility."

---

[28] Yun Li & Jesse Pound, *GameStop's stock closes down more than 40% after brokers place restrictions on trades*, CNBC (Jan. 28, 2021, 4:16 PM), https://www.cnbc.com/2021/01/28/gamestop-reverses-losses-and-surges-another-30percent-in-the-premarket-to-450-as-mania-continues.html (emphasis added).

[29] Avie Schneider, *Game Back On: GameStop Stock Rebounds As SEC Warns Against Market Manipulation*, NPR (Jan. 29, 2021, 11:49 AM), https://www.npr.org/2021/01/29/962047287/game-back-on-gamestop-stock-rebounds-as-sec-warns-against-market-manipulation (noting that GameStop share prices "plunged 44%" on Thursday, but then rebounded Friday, along with AMC).

47.     Instead, the Customer Agreement states that Robinhood can limit individual users from making trades.[30] But those clauses are clearly intended to give Robinhood the ability to prohibit individual users from making trades for reasons having to do with the *user's* individual misconduct or other issues having to do with the user's individual account activity—such as failing to make good on losses in margin accounts—rather than to institute blanket prohibitions on buying broadly traded stocks when their prices are rising.

48.     In addition, while the Customer Agreement discusses "market volatility," that section does not expressly state or suggest that Robinhood could or would ever restrict the purchase of specific broadly traded stocks, as it did with the Restricted Stocks.[31] Instead, that section discusses possible pricing issues, possible order delay issues, what happens when the market closes, and limit orders.

49.     Further, the Customer Agreement discusses possible limits on trading "bulletin board" or "pink sheet stocks," which involve companies *not* listed on major exchanges.[32] The Customer Agreement states that the Robinhood user "understand[s] that bulletin board stocks may be subject to different trading rules," and that "Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions."[33] That "limit order" language suggests that Robinhood contemplated—and communicated to its users—that there could be possible restrictions on orders regarding stocks *not* listed on major exchanges. This further suggests that Robinhood users had no reason to expect Robinhood would ever issue a restriction on all of its users' capacities to purchase broadly traded stocks like GameStop, AMC, and others.

---

[30] *Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement*, Robinhood, §§ 5(F) & 16, https://cdn.robinhood.com/assets/robinhood/legal/Robinhood%20Customer%20Agreement.pdf (last revised Dec. 30, 2020).

[31] *See id* at § 13.

[32] Will Kinton, *Over-The-Counter Bulletin Board (OTCBB)*, Investopedia (Apr. 11, 2019), https://www.investopedia.com/terms/o/otcbb.asp (discussing history of bulletin board stocks); Chris B. Murphy, *Pink Sheets*, Investopedia (Mar. 31, 2020), https://www.investopedia.com/terms/p/pinksheets.asp (same for pink sheet stocks).

[33] Customer Agreement, *supra* n. 30 at § 14.

50. Robinhood's Customer Agreement contains an arbitration provision.[34] But that provision contains a prohibition, consistent with FINRA regulations, on enforcing a pre-dispute arbitration agreement "against any person who has initiated in court a putative class action":

> ***No person shall*** bring a putative or certified class action to arbitration, ***nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action***; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court.[35]

The above bars Robinhood—or anyone else, for that matter—from attempting to compel Plaintiffs to arbitrate their claims after this or any putative class of which they are a member has been filed.

## V.    CLASS ACTION ALLEGATIONS

51. This matter is brought by Plaintiffs on behalf of themselves and those similarly situated, under Rule 23 of the Federal Rules of Civil Procedure. Because Robinhood's conduct was uniformly designed and implemented throughout the United States and uniformly impacted and injured its users, Plaintiffs seek certification of nationwide classes under Rule 23(b)(3) and 23(b)(2).

52. The classes that Plaintiffs seek to represent are defined as follows:

> **Nationwide Ownership Class:** All Robinhood users in the United States who owned shares of the Restricted Stocks[36] on or before January 28, 2021.

> **Nationwide Attempted Buyer Class:** All Robinhood users in the United States who attempted but were unable to use the Robinhood trading platform[37] to buy shares of the Restricted Stocks on or after January 28, 2021.

53. **Numerosity/Impracticability of Joinder:** Class Members are so numerous that joinder of all members would be impractical. The proposed Classes likely contain thousands of members, if

---

[34] *Id.* at § 38.

[35] *Id.* (emphases added).

[36] The Restricted Stocks include $AAL, $AMC, $BB, $BBBY, $CTRM, $EXPR, $GME, $KOSS, $NAKD, $NOK, $SNDL, $TR and $TRVG.

[37] *See* Theresa W. Carey, *Fidelity Investments vs. Robinhood*, Investopedia (Jan. 29, 2021), https://www.investopedia.com/fidelity-vs-robinhood-4587945#:~:text=Most%20order%20types%20one%20can,are%20identical%20across%20the%20platforms (noting that Robinhood allows it users to make trades via its app or its website).

not millions, considering that Robinhood had a reported 13 million users as of October 2020 and that, on January 28, 2021, Robinhood imposed a restriction on all its users' abilities to purchase the Restricted Stocks.

54.    **Commonality and Predominance:** there are common questions of law and fact that predominate over any questions affecting only individual Class Members. These common legal and factual questions include but are not limited to the following:

A.    Whether Robinhood's restriction on January 28, 2021, violated the terms of its Customer Agreement with its users and/or amounted to a breach of contract under California law;

B.    Whether Robinhood's restrictions on January 28, 2021, constituted a breach of the implied covenant of good faith and fair dealing under California law;

C.    Whether Robinhood had a duty to exercise reasonable care to not interfere with Plaintiffs' and Class Members ability to purchase the Restricted Stocks;

D.    Whether Robinhood breached its duty when it prohibited Plaintiffs and Class Members' ability to purchase the Restricted Stocks;

E.    Whether Robinhood's breach foreseeably damaged Plaintiffs and Class Members;

F.    Whether Robinhood's restrictions on January 28, 2021, violated California's Unfair Competition Law because they were unlawful, fraudulent, or unfair under California or other laws;

G.    Whether Robinhood's restriction on January 28, 2021, caused Plaintiffs and the Class Members to suffer damages and, if so, the amounts thereof;

H.    Whether Robinhood's justification for the restrictions on January 28, 2021, was fraudulent;

I.    Whether Robinhood's restrictions on January 28, 2021, were prompted by any of its relationships with hedge funds or market-makers, like the various Citadel entities;

J.    Whether Robinhood should be permanently enjoined from restricting all its users' abilities to purchase or sell specific stocks.

55.     **Typicality:** The representative Plaintiffs' claims are typical of the claims of the Class Members because Plaintiffs' claims arise out of the restrictions Robinhood placed on its users on January 28, 2021, and Plaintiffs and the Class Members were all injured by Robinhood's restrictions.

56.     **Adequacy:** Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including in the areas of consumer protection, antitrust, and securities law.

57.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions if not billions of dollars, the individual damages incurred by each Class Member will range from small amounts to large amounts. Many individual Class Members likely do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all the parties and the court system because of multiple trials of the same factual and legal issues. Other than the likely eventual need to consolidate the various actions filed around the country related to Robinhood's alleged misconduct, Plaintiffs do not anticipate any difficulty in managing this litigation.

58.     **Final Injunctive Relief:** Robinhood has acted or refused to act on grounds generally applicable to the Class Members and, as such, final injunctive relief is appropriate, including but not limited to an injunction barring Robinhood from issuing broad restrictions across all its users that prohibit or limit buys related to specific stocks.

59.     **Notice:** Robinhood has, or has access to, addresses, phone numbers, e-mail addresses, and other contact information for the Class Members, which may be used for the purpose of providing notice of the pendency of this action.

## VI.     CLAIMS

### COUNT ONE
### Breach of Contract

60.     Plaintiffs incorporate the above allegations and reallege them here.

61.    To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood "[i]n consideration of Robinhood . . . opening one or more accounts on [his or her] behalf . . . for the purchase, sale, or carrying of securities or contracts relating thereto."[38]

62.    Plaintiffs and Class Members all entered the Customer Agreement with Robinhood and performed under its terms.

63.    Robinhood breached the Customer Agreement with Plaintiffs and the Class Members on January 28, 2021, by preventing all its users from buying, but not selling, the Restricted Stocks.

64.    Robinhood also breached its Customer Agreement in the following ways: (1) by not disclosing that it would arbitrarily restrict specific broadly traded securities from being purchased on its trading platform; (2) by failing to provide an adequate explanation to Plaintiffs and the Class Members as to why the Restricted Stocks could be sold but not bought; (3) by knowingly putting Plaintiffs and the Class Members at a disadvantage to other investors who were still able to buy the Restricted Stocks; (4) by preventing Plaintiffs and the Class Members from performing trades in a timely manner or at all; and (5) by failing to comply with applicable legal, regulatory, or licensing requirements for a stock broker.

65.    Robinhood's breach damaged Plaintiffs and Class Members by causing the value of the Restricted Stocks to go down on January 28, 2021, and/or by preventing Class Members from buying shares of the Restricted Stocks that decreased on January 28, 2021.

## COUNT TWO
## Breach of Implied Covenant of Good Faith & Fair Dealing

66.    Plaintiffs incorporate the above allegations and reallege them here.

67.    To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood.

68.    Plaintiffs and Class Members all entered the Customer Agreement with Robinhood and performed under its terms.

---

[38] Customer Agreement, *supra* n. 30 at 1.

69.     Robinhood had an implied duty of good faith and fair dealing to refrain from interfering with Plaintiffs' and Class Members' ability to purchase securities.

70.     Robinhood breached its implied duty on January 28, 2021, when it prevented all its users from buying the Restricted Stocks, thereby interfering with Plaintiffs' and Class Members' ability to purchase securities and frustrating Plaintiffs' and Class Members' rights to the benefits of the Customer Agreement, specifically by: (1) failing to provide services necessary to timely execute a trade on the stock market; (2) failing to allow Plaintiffs and Class Members to trade certain securities at all; (3) failing to inform Plaintiffs and Class Members in a timely and effective manner about the dramatic changes to users abilities to purchase Restricted Stocks; and (4) by prohibiting Plaintiffs and Class Members from buying Restricted Stocks due to for Robinhood's own pecuniary interests and not disclosing that interest to Plaintiffs or the other Class Members.

71.     Robinhood acted in bad faith by placing its own pecuniary interests, and/or the interests of others—including, potentially, various Citadel entities—above the interests of Plaintiffs and Class Members.

72.     Robinhood acted in bad faith when it claimed that "market volatility" justified its restrictions.

73.     Robinhood's breach damaged Plaintiffs and Class Members by causing the value of the Restricted Stocks to go down on January 28, 2021, and/or by preventing Class Members from buying shares of the Restricted Stocks that decreased on January 28, 2021.

## COUNT THREE
### Negligence (Common Law)

74.     Plaintiffs incorporate the above allegations and reallege them here.

75.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its users.

76.     Robinhood breached its duty to exercise reasonable care when, on January 28, 2021, Robinhood restricted Plaintiffs and Class Members from purchasing the Restricted Stocks, without warning, even though the value of the stocks was increasing during the dates leading up to January 28, 2021.

77.     Robinhood's breach foreseeably made Plaintiffs, Class Members, and other users of the Robinhood trading app unable to buy shares of the Restricted Stocks.

78.     Robinhood's breach foreseeably damaged Plaintiffs and Class Members because it caused the value of the Restricted Stocks to go down because Robinhood's 13 million users—and potential new users—could no longer buy the Restricted Stocks but could only sell, and because it foreseeably affected the Restricted Stocks' market prices.

## COUNT FOUR
### Negligence (Cal. Civ. Code § 1714)

79.     Plaintiffs incorporate the above allegations and reallege them here.

80.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its users.

81.     Robinhood breached its duty to exercise reasonable care when, on January 28, 2021, Robinhood restricted Plaintiffs and Class Members from purchasing the Restricted Stocks, without warning, even though the value of the stocks was increasing during the dates leading up to January 28, 2021.

82.     Robinhood's breach foreseeably made Plaintiffs, Class Members, and other users of Robinhood unable to buy shares of the Restricted Stocks.

83.     Robinhood's breach foreseeably damaged Plaintiffs and Class Members in two primary ways: 1) it caused the value of the Restricted Stocks to go down when Robinhood's 13 million users could no longer buy the Restricted Stocks but could only sell, and 2) it foreseeably affected the Restricted Stocks' market prices.

## COUNT FIVE
### Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)

84.     Plaintiffs incorporate the above allegations and reallege them here.

85.     California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's UCL is interpreted broadly and provides a

cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the ambit of California's UCL.

86.     Robinhood engages in substantial sales and marketing of its accounts, services, and products within the State of California.

87.     Robinhood's January 28, 2021 restriction on its users' ability to buy the Restricted Stocks was unlawful, fraudulent, and/or unfair.

88.     Robinhood's restriction was unlawful because it violated California laws, as alleged above, and potentially additional laws.

89.     Robinhood's restriction was fraudulent because Robinhood advertises that it wants to "democratize finance for all" and give "everyone . . . access to the financial markets"; but, then, on January 28, 2021, Robinhood restricted millions of users, including Plaintiffs and Class Members, from accessing financial markets to buy the Restricted Stocks.

90.     Robinhood's restriction was also fraudulent insofar as its purported reason for doing so was supposedly "market volatility."

91.     Robinhood's restriction was unfair because while Plaintiffs and Class Members were unable to buy the Restricted Stocks, other investors and entities were still able to avail themselves of the free market, which disadvantaged Plaintiffs and Class Members from competing with those other investors and entities. Once Robinhood's users have transferred funds into Robinhood, it can take days to withdraw those funds, such as to use them in a brokerage account elsewhere, so they could not make trades elsewhere with those funds to mitigate this harm.

92.     Plaintiffs and Class Members were damaged by Robinhood's restriction of its users' ability to purchase Restricted Stocks on Thursday, January 28, 2021, and have not yet recovered to where they were before Robinhood imposed the restriction.

93.     Plaintiffs seek injunctive relief, including whatever relief is necessary to prevent Robinhood from engaging in more unlawful, deceptive, and/or unfair practices.

94.     Plaintiffs also request compensatory and punitive damages, attorneys' fees, costs, and any other relief the Court deems proper as a result of Robinhood's violation of the UCL.

1

2

## VII.   DEMAND FOR JURY TRIAL

95.     Plaintiffs respectfully request a trial by jury on all claims triable as a matter of right.

## VIII.   PRAYER FOR RELIEF

96.     WHEREFORE, Plaintiffs on their own behalf and all other similarly situated customers of Defendants, or those impacted by Defendants' restriction on its users' ability to buy the Restricted Stocks, respectfully demand judgment against Defendants for:

A.     That the Court certify this lawsuit as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and that Plaintiffs be designated as class representatives and that Plaintiffs' counsel be appointed as Class counsel on behalf of two nationwide classes;

B.     That the Court award Plaintiffs and Class Members damages against Defendants;

C.     That the Court grant Plaintiffs' requested injunctive relief;

D.     That the Court award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees and expenses, including expert fees, as provided by law; and

E.     That the Court award Plaintiffs and the Class prejudgment interest at the maximum rate allowable by law.

DATED this 5th day of March, 2021.

KELLER ROHRBACK L.L.P.

By: *s/ Jeffrey Lewis*
Jeffrey Lewis (SBN 66587)
KELLER ROHRBACK L.L.P.
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Phone: (519) 463-3900
Fax: (510) 463-3901
jlewis@kellerrohrback.com

Gretchen Freeman Cappio (*pro hac vice forthcoming*)
Ryan McDevitt (*pro hac vice forthcoming*)
Maxwell Goins (*pro hac vice forthcoming*)
Rachel Morowitz (*pro hac vice forthcoming*)
KELLER ROHRBACK L.L.P.

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Phone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
mgoins@kellerrohrback.com

Joseph G. Sauder (*pro hac vice forthcoming*)
Matthew D. Schelkopf (*pro hac vice forthcoming*)
Joseph B. Kenney
Sonjay C. Singh
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: 610-200-0580
Fax: 610-421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com
scs@sstriallawyers.com

***Attorneys for Plaintiffs***